UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
In re:
INTERNATIONAL TOBACCO PARTNERS, LTD.,                Case No. 10-74894-AST
                                                     Chapter 11
                              Debtor.
--------------------------------------------------------------------X
INTERNATIONAL TOBACCO PARTNERS, LTD.,
                              Plaintiff,

        - against -                                  Adv. Proc. No. 11-9271-AST

STATE OF OHIO, GRAND TOBACCO, LTD.,
AND LPC, INC.,
                              Defendants.
--------------------------------------------------------------------X

## DECISION GRANTING PARTIAL ABSTENTION AND
## DENYING MOTIONS TO DISMISS AND DENYING INJUNCTIVE RELIEF

### Introduction

International Tobacco Partners, Ltd. ("Debtor"), plaintiff in this adversary proceeding

and the debtor in the main bankruptcy case, commenced this adversary proceeding against

Defendant, the State of Ohio ("Ohio" or "Defendant"), seeking injunctive relief and declaratory

judgment that the Debtor has a superior interest in $981,401.09 in funds currently held in escrow

(the "Escrow Release Funds") at the Eastern Bank of Boston, Massachusetts ("Eastern").  The

Court's ruling[1] will address the following matters:

1.    Ohio's motions to dismiss this adversary proceeding [dkt items 8, 24][2];
2.    Ohio's amended motion for abstention [dkt item 14]; and
3.    Debtor's request for injunctive relief [dkt item 1].

---

[1]    This decision was written as an oral ruling to be read in open court.  Thus, it has a more conversational tone than opinions drafted solely for issuance in written form.

[2]    Unless otherwise indicated, references to the docket are as "dkt" and refer to the docket in this adversary proceeding, 11-09271-ast. The Court notes that Debtor filed an Amended Complaint [dkt item 15] on September 27, 2011, which added two defendants: Grand Tobacco, Ltd. ("Grand Tobacco") and LPC, Inc. ("LPC").  Those two defendants' time to file an answer expired on October 28, 2011, and neither defendant has yet appeared in this adversary proceeding. FED R. BANKR. P. 7012(a).

As will be discussed more fully below, Ohio's motions to dismiss, as applied to the Complaint and the Amended Complaint, is denied.  With respect to Ohio's Motion for Abstention, the Court finds that mandatory abstention under 28 U.S.C. § 1334(c)(2) is not warranted in this adversary proceeding; however, the Court will partially abstain under the permissive abstention statute, 28 U.S.C. § 1334(c)(1), subject to the following terms and limitations:

- This Court hereby partially abstains in favor of the action currently pending before the Superior Court of the Commonwealth of Massachusetts for the County of Suffolk for one hundred eighty (180) days from the date of entry of this written decision, except that the Court does not abstain with respect to Debtor's Fifth Cause of Action Against Ohio in the Amended Complaint, which alleges a violation of the automatic stay provisions of § 362(a);

- At the end of the 180-day period, Debtor and Ohio are directed to appear before this Court to report on the status of the state court litigation; and

- If the state court litigation is resolved by judgment on the merits or by settlement earlier than 180 days from the date of this decision, the parties are directed to advise this Court by letter docketed in the adversary proceeding as to the nature of that resolution.[3]

Finally, the Court denies Debtor's request for a temporary restraining order ("TRO"), because the Court finds that such relief is redundant to the automatic stay and is, therefore, not necessary at this time.

### Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (D), (K), and (O), and 1334(b), and the Standing Order of Reference in effect in the Eastern District of New York dated August 28, 1986.

---

[3]    The Court notes that if the state court litigation is resolved by settlement, then the parties must move for approval of that settlement by this Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**Facts and Background**

The following facts are stated based upon drawing all appropriate inferences in favor of Debtor in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In 1998, a Master Settlement Agreement ("MSA") was entered into by the "Big Four" U.S. tobacco manufacturers and forty-six (46) states, including Ohio, Massachusetts, and Missouri, arising out of certain well-publicized tobacco litigation.  Not every tobacco manufacturer in the world was a party to the MSA.  To offset a perceived competitive advantage that non-participating tobacco manufacturers ("NPMs") would receive from not paying any sums under the MSA or not later becoming parties to the MSA, many states, including Ohio and Missouri, enacted non-participating manufacturer statutes to address conditions under which NPM's could sell their tobacco products in the United States.

Grand Tobacco, a corporation formed under the laws of the Republic of Armenia, is an NPM as defined in the MSA and the NPM statutes of Missouri (Mo. Rev. Stat. Ch. 196 § 1000(1)).  Debtor is a distributor of tobacco products for Grand Tobacco in the United States.

In order for Grand Tobacco to sell its tobacco products in Missouri, it is required to establish an escrow account and make annual MSA payments into that account ("Escrow Payments").  The purpose of the escrow account and Escrow Payments is for Missouri to have an asset to attach in the event that it is sued for damages by one of its citizens who alleges he or she was harmed by the use of Grand Tobacco's products sold in Missouri.  If Grand Tobacco fails to make its annual Escrow Payment, it cannot sell its products in Missouri.

Commencing in approximately 2003, Debtor, as distributor, and Grand Tobacco, as manufacturer, orally agreed that Debtor would be responsible for making all of Grand Tobacco's

Escrow Payments in the United States.  The oral agreement also purportedly provided that upon release of the funds from escrow, they would be returned to Debtor.

In February 2005, the State of Ohio recovered a judgment against Grand Tobacco for failure to make MSA payments due to Ohio for the years 2001 through 2003.  The judgment is in the amount of $1,253,961.61.

On April 7, 2010, in accordance with the MSA, Grand Tobacco opened an escrow account for the benefit of the State of Missouri at Eastern.  Amended Complaint, Exhibit A, Escrow Agreement ("Escrow Agreement"). [dkt item 15]  The Escrow Agreement was signed by Eastern on April 7, 2010, and signed by Grand Tobacco on April 14, 2010, and provides in pertinent part:

- "This Escrow Agreement is made and entered into this 7th day of April, 2010, by Grand Tobacco, Ltd. (the "Company") and Eastern (the "Escrow Agent")."  *Id.* at 1.

- "No persons or entities other than the Beneficiary States[4] that have enacted NPM Statutes and Releasing Parties[5] are intended beneficiaries of this Escrow Agreement, and only the Beneficiary States, the Releasing Parties, the Company and the Escrow Agent shall be entitled to enforce the terms of this Escrow Agreement." *Id.* at 11.

- The Escrow Agreement is "governed by the laws of the state where the Escrow Agent is incorporated," here, the Commonwealth of Massachusetts. *Id.* at 1, 12.

- Once the funds are released from escrow, the amount released reverts back to "the Company," which is defined as "Grand Tobacco, Ltd." *Id.* at 1, 6.

- If a beneficiary state does not release the funds early, then they remain in escrow for 25 years.  *Id.* at 6-7.

- Grand Tobacco and Eastern are the only signatories to the Escrow Agreement, in which Debtor is not listed as a party.  *Id.* at 1, 15.

---

[4]      "Beneficiary State" is defined as "a state that is a party to the Master Settlement Agreement for whose benefit funds are being escrowed pursuant to this Escrow Agreement." *Id.* at 2.

[5]      "Releasing Party" is not defined in the Escrow Agreement. *See id.* at 1-3.

The Escrow Agreement does, however, provide that Debtor is to receive a copy of any notice required under the Escrow Agreement.[6]

On June 25, 2010, Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (main bankruptcy case, 10-74894-ast). The Debtor remains in possession of its properties and continues to operate its business as a debtor-in-possession under Bankruptcy Code §§ 1107(a) and 1108.

On March 28, 2011, Debtor filed a motion in the main bankruptcy case seeking authorization to obtain $1.2 million in post-petition financing from an entity referred to as LPC, Inc., and to grant LPC a first lien and security interest in substantially all Debtor's assets. Motion to Authorize/Direct Debtor-in-Possession to Obtain Post-Petition Financing, at ¶ 4

---

[6] Section 13 of the Escrow Agreement provides in pertinent part:

**SECTION 13. Notices.**

All notices required by this Escrow Agreement shall be in writing and shall be deemed to have been received (a) immediately if sent by facsimile transmission (with a confirming copy sent the same Business Day by registered or certified mail), or by hand delivery (with signed return receipt), or (b) the next Business Day if sent by nationally recognized overnight courier, in any case to the respective addressees as follows:

| | |
|---|---|
| If to Company: | Grand Tobacco, Ltd. . . . |
| With a copy to: | International Tobacco Partners, Ltd. . . . |
| If to the Escrow Agent: | Eastern . . . |
| If to the Beneficiary State(s): | The information set forth in Attachment A is incorporated herein by this reference. |

If the Company or the Escrow Agent changes its address for notices required by the Escrow Agreement, that entity shall immediately notify the other undersigned party and the Beneficiary States of that change. Written notice required by this Escrow Agreement shall be deemed sufficient and adequate if sent to the last known address of the Company, Escrow Agent, or the applicable Beneficiary State in the manner provided under this Section.

*Id.* at 12-13.

("Financing Motion"). [dkt item 93, M.C.[7] 10-74894-ast]  In its Financing Motion, Debtor stated "the proceeds of the loan will be used by the Debtor to make an escrow deposit with the State of Missouri and allow the Debtor to continue to sell its products in Missouri." *Id.*  Debtor asserted that the funds were necessary to make an escrow deposit pursuant to the terms of the MSA, without which Debtor would not be able to continue to sell its tobacco products in Missouri.  *Id.* at ¶ 10.   Debtor's Financing Motion indicated that LPC, the lender, is one of Debtor's distributors.  *Id.* at ¶ 8.  However, Debtor's Financing Motion does not state that Debtor would be making the deposit on behalf of Grand Tobacco.

By Order dated April 18, 2011, Debtor's Financing Motion was granted ("Order Granting Post-Petition Financing"). [dkt item 100, M.C. 10-74894-ast]  Thereafter, $1,177,526.67 in funds Debtor borrowed from LPC were transferred directly from LPC to Eastern, Grand Tobacco's escrow agent.   Of these funds, approximately $1,006,859.02 represented Grand Tobacco's annual MSA payment, with the rest apparently being made for the benefit of other tobacco manufacturers. The identity of these other manufacturers is not presently known.  According to Debtor, approximately $981,000 of the amount paid into escrow is to be released from escrow by the State of Missouri in the near future (the "Escrow Release Funds").

On May 31, 2011, Ohio commenced a lawsuit in the Superior Court of the Commonwealth of Massachusetts for the County of Suffolk ("Massachusetts Court"), seeking to domesticate its February 2005 judgment in Massachusetts, and seeking an ex parte writ of attachment against the $981,000 Escrow Release Funds (the "Massachusetts Action").  It appears that Ohio executed the writ of attachment by service of a summons and notice on Eastern on June 10, 2011.  Debtor was not named a party to the Massachusetts Action.

---

[7]        References to "M.C." refer to Debtor's main bankruptcy case, 10-74894-ast.

On June 15, 2011, Debtor filed an Order to Show Cause and Motion for Contempt against the State of Ohio in its main bankruptcy case. [dkt item 112, M.C. 10-74894-ast] In its motion, Debtor asserted that Ohio had violated the automatic stay by attaching the Escrow Release Funds.  As proof of its interest in the Escrow Release Funds, Debtor submitted an agreement Debtor claims that its president, Jeffrey Avo Uvezian, signed on January 7, 2011, and which it claims Grand Tobacco's president, Mikael Vardanyan, countersigned on June 7, 2011. Amended Complaint, Exhibit B, Agreement ("June 7 Agreement"). [dkt item 15] A key provision of the June 7 Agreement from Debtor's perspective provides that Debtor shall have "complete ownership" of any escrow funds "upon release from escrow" of such funds.[8]

The Court held a hearing on Debtor's contempt motion on June 22, 2011, and by Order dated July 1, 2011, the Court denied that motion, but without prejudice to Debtor proceeding by adversary proceeding. [dkt item 137, M.C. 10-74894-ast]

## Procedural History of This Adversary Proceeding

On August 11, 2011, Debtor commenced this adversary proceeding against Ohio, seeking recovery or turnover of the Escrow Release Funds, as well as temporary and permanent injunctive relief (the "Complaint"). [dkt item 1] The Complaint was subsequently amended on

---

[8]      Paragraph 2 of the June 7 Agreement provides:

2.    Ownership of Escrow Funds
GT [Grand Tobacco] and ITP [International Tobacco Products] agree ITP is owner of MSA escrow funds established by ITP.  Most states require periodic payments into escrow accounts of amounts based on sales of a manufacturer's product in that state for the relevant time period. These amounts are held in escrow to pay future state claims arising from or relating to selling the manufacturer's products in the state.  If no such claims are made then the funds will be released from escrow after 25 years.  ITP has established such escrow accounts and has funded required escrow payments.  The escrow accounts are in GT's name because the State laws require them to be in the name of the manufacturer, but GT and ITP hereby confirm their understanding and agreement that any such funds below to ITP.  ITP is entitled to receive any and all interest earned on the escrow funds, and upon release from escrow all such funds shall be paid to ITP which has complete ownership of any such funds.

7

September 27, 2011, to add two new defendants, Grand Tobacco and LPC (the "Amended Complaint"). [dkt item 15]

On August 15, 2011, the Court scheduled an emergency hearing on Debtor's request for a TRO for August 24, 2011.  At the August 24 hearing, Ohio indicated that it had sought and obtained an injunction from the Massachusetts Court on August 18, 2011, which enjoined Eastern from releasing the Escrow Release Funds to any person or entity pending resolution of Ohio's request for a preliminary injunction in Massachusetts.  At the conclusion of the hearing, this Court determined not to issue a TRO at that time, but took the matter under submission, and allowed post-hearing submissions with an ultimate deadline, after agreed extensions, of October 24, 2011.

On August 22, 2011, Ohio filed an Objection and Motion to Dismiss the Complaint ("Motion to Dismiss"). [dkt item 8]  Subsequently, on October 27, 2011, Ohio filed a motion to dismiss the Amended Complaint. [dkt item 24 (together with dkt item 8, "Motions to Dismiss")]

On September 26, 2011, Ohio filed an Amended Motion to Dismiss and Motion for Abstention, requesting that the Court abstain from hearing this adversary proceeding on the grounds of both mandatory and permissive abstention ("Motion for Abstention"). [dkt item 14]

On October 18, 2011, Debtor filed its Response and Objection to the Motion for Abstention, asking this Court to hear and determine this adversary proceeding. [dkt item 20]

On October 24, 2011, Ohio filed its Reply of State of Ohio to Response of International Tobacco Partners, Ltd. ("Ohio's Reply"). [dkt item 22]

On October 31, 2011, this Court orally announced its ruling on the preceding matters, which rulings are memorialized herein.  Filings by the parties made after the October 24, 2011 deadline have not been considered by the Court in rendering its decision.

8

<u>**Analysis and Discussion**</u>

**I.  Ohio's Motions to Dismiss**

The first issue that the Court will address is Ohio's Motions to Dismiss. [dkt items 8, 24]

**A. Pleading Standard Under Rule 12(b)(6)**

The United States Supreme Court has twice recently addressed the pleading standard to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007).  In *Twombly*, the Supreme Court noted that the standard for determination of a Rule 12(b)(6) motion that had been routinely recited from the fifty year old Supreme Court decision in *Conley v. Gibson*, 355 U.S. 41, 43-44 (1957), had been abrogated.  The standard is no longer that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 46 (1957).  "Rather, now, the factual allegations in a complaint must satisfy a flexible plausibility standard."  *In re Jones*, 2011 WL 1549060 at *2 (Bankr. E.D.N.Y. April 21, 2011).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 556.  The plausibility standard "asks for more than a sheer possibility that a defendant has acted" so as to create liability.  *See id.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement

to relief.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557 (internal citations omitted)).   Neither *Iqbal* nor *Twombly* departed from the standard that, in considering a Rule 12(b)(6) motion, a court is to accept as true all factual allegations in the Complaint and draw all inferences in favor of the plaintiff.  *Iqbal*, 129 S.Ct. at 1949-50; *Twombly*, 550 U.S. at 555-56; *see also Cleveland v. Caplaw Enters*., 448 F.3d 518, 521 (2d Cir. 2006); *Arizona Central Credit Union v. Celunnious Jones, Jr. (In re Celunnious Jones, Jr.)*, Decision and Order Granting in Party and Denying in Party Motion to Dismiss Adversary Proceeding, at 4-6, 10-9033-ast [dkt item 9] (Bankr. E.D.N.Y. April 20, 2011).

The Court may also consider documents that are integral to the complaint in deciding a motion to dismiss.  *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007).   When documents contain statements that contradict allegations in a complaint, the documents control and the court need not accept as true the allegations in the complaint to the extent they are contradicted.  *Id.* at 510–11.  "Where an allegation in the complaint conflicts with other allegations, or where the plaintiff's own pleadings are contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint, the court is neither obligated to reconcile the pleadings with the other matter nor accept the allegation in the pleadings as true in deciding a motion to dismiss."  *In re Vararthos*, 445 B.R. 257, 261 (Bankr. S.D.N.Y. 2011).

### B.  Whether Debtor Has Pled Sufficient Facts To State a Plausible Claim for Relief

At its core, Debtor's Complaint and Amended Complaint allege that, by virtue of the June 7 Agreement between Debtor and Grand Tobacco, Debtor acquired a property interest in the Escrow Release Funds, and that the State of Ohio, by commencing an action in the Massachusetts Court to acquire those funds, has interfered with the bankruptcy estate's property interest in those funds.

Section 541(a) of the Bankruptcy Code defines property of the estate to include "property, wherever located and by whomever held" including "(7) Any interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7).  The Second Circuit has recognized that "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541.  Contractual rights clearly fall within the reach of this section . . . ."  *Chartschlaa v. Nationwide Mut. Ins. Co.,* 538 F.3d 116, 122 (2d Cir. 2008) (quoting *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993)).

Despite this broad language, in cases involving escrow funds, courts have generally held that "[f]unds that are deposited into an escrow account by a debtor, for the benefit of others, cannot be characterized as property of the estate."  *Dzikowski v. NASD Regulation, Inc., In re Scanlon*, 239 F.3d 1195, 1198 n.6 (11th Cir. 2001) (internal citations and quotations omitted); *see also In re Carousel Int'l Corp.*, 89 F.3d 359, 361-62 (7th Cir. 1996); *Carlson v. Farmers Home Admin. (In re Newcomb)*, 744 F.2d 621, 626-27 (8th Cir. 1984).  In *Scanlon*, the Eleventh Circuit found that funds placed in escrow to pay victims of the debtor's securities violations were not property of the estate. *Id*. at 1199.  Although the *Scanlon* debtor had legal ownership of the funds, the funds were not property of the estate because they were beyond the debtor's control and could only be paid to the debtor's victims. *Id.*  Similarly, in *Clancy v. Goldberg*, the district court for the Northern District of New York concluded that "because the funds . . . were to be held in escrow by law . . . the debtor had neither a legal nor an equitable interest, and so the funds are not part of the bankruptcy estate."  183 B.R. 672, 676 (N.D.N.Y. 1995).

However, ownership of escrow funds becomes a fact-specific question when an agreement relating to the transaction that resulted in the funds being deposited into escrow provides the debtor with a specific right to those funds upon the occurrence of an event

subsequent. In such a situation, the court must look to the terms of the agreement to determine the rights of the various parties. In *Georgia Heritage Associates, LP v. Westfields Apartments, LLC (In re Westfields Apts., LLC)*, the bankruptcy court concluded that funds the debtor had deposited into escrow were not property of the estate because "there were no circumstances under which the Debtor was entitled to distribution of the Funds under the Sales Contract; the Funds were to be paid over to Georgia Heritage regardless of whether the Sales Contract closed." 2010 Bankr. LEXIS 1789, at *15 (Bankr. S.D. Ga. Apr. 27, 2010). In so ruling, the *Westfields* court distinguished the following three cases, cited by the debtor, in which escrow funds were found to be property of the estate because, in those cases, those debtors had a right to return of the funds upon the occurrence of a condition specified in their respective contracts. *Id.* at n.7.

In *In re Johnson*, the bankruptcy court for the Northern District of Illinois[9] found that a real estate sale deposit held in escrow was property of the estate because "the Contract provides that if the Buyer breaches the Contract, the Trustee's sole and exclusive remedy is to retain the Buyer's earnest money. Thus, the Court finds that the Buyer's forfeited earnest money under the Contract for the sale of the Property became property of the bankruptcy estate under 11 U.S.C. § 541(a)(7)." 379 B.R. 150, 163 (Bankr. N.D. Ill. 2007).

Similarly, in *Silverman v. Merce (In re Silverman),* the bankruptcy court concluded that a Chapter 11 debtor involved in a real estate purchase was entitled to return of its buyer's escrow

---

[9]    The parties cited few cases to support their arguments for and against the estate having an interest in the escrow funds. In citing the above cases, the Court notes that there is limited Second Circuit case law directly on point on this issue. *See, e.g., In re Netia Holdings S.A.*, 278 B.R. 344, 355 (Bankr. S.D.N.Y. 2002) (involving a dispute as to whether an escrow agreement existed); *Keene Corp. v. Acstar Ins. Co. (In re Keene Corp.),* 162 B.R. 935, 943 (Bankr. S.D.N.Y. 1994) (finding that debtor was divested of legal title to funds held in escrow securing a judgment when the judgment became final prior to the debtor filing the petition); *In re O.P.M. Leasing Services, Inc.*, 46 B.R. 661, 668 (Bankr. S.D.N.Y. 1985) (concluding escrow funds were not property of the estate because the debtor "retained only a contingent right to the funds which was of no value to the estate because it was not an interest which a judgment creditor of OPM could reach."); *In re Treiling*, 21 B.R. 940, 943-44 (Bankr. E.D.N.Y. 1982) (addressing ownership of escrow funds where the debtor was escrow agent); *see also Cassirer v. Herskowitz (In re Schick)*, 234 B.R. 337, 340 (Bankr. S.D.N.Y. 1999) (same).

deposit held in escrow upon the seller's default, because the terms of the sales contract provided for payment of escrow to the debtor upon the seller's default. Nos. 98 B 37764, 98 A 02064, 1999 Bankr. LEXIS 572, at *18-20, 1999 WL 326328, at *7 (Bankr. N.D. Ill. May 18, 1999).

Finally, in *Turner v. Burton (In re Turner),* the bankruptcy court for the District of Maine concluded that debtors were entitled to half the buyer's deposit in escrow because the sales contract provided that "upon default the purchaser's earnest money deposit would be divided equally between them." 29 B.R. 628, 630 (Bankr. D. Me. 1983).

Here, it appears that Debtor does not have an interest in the Escrow Release Funds under the Escrow Agreement in and of itself. Grand Tobacco and Eastern are the only parties to the Escrow Agreement, and they are the only parties that signed the Escrow Agreement. Escrow Agreement at pp. 1, 15. [dkt item 15, Exhibit A] Debtor is not identified as a party to the Escrow Agreement, and Debtor did not sign the Escrow Agreement. *Id.* at pp. 1, 15. The Escrow Agreement also states that the only intended beneficiaries are the "beneficiary states" – here, the State of Missouri – and, further, only Eastern, as escrow agent, and Grand Tobacco "shall be entitled to enforce the terms of this Escrow Agreement." *Id.* at p. 11. In fact, the language of the Escrow Agreement appears to indicate that Debtor has no right to the funds,[10] either while in escrow or after the funds are released from escrow. *See id.* at p. 6 (Section 3(f)(ii) provides that the "Excess Amount shall be released and revert back to the Company," which is defined in the preamble as "Grand Tobacco, Ltd."). Most persuasive of all is the concession by Debtor's counsel both during oral arguments on August 24, 2011, and in its moving papers, that Debtor has no ownership interest in the funds while in escrow. Order to Show Cause ¶ 7. [dkt item 112, M.C. 10-74894-ast]

---

[10]      The Escrow Agreement does provide that Debtor is to receive a copy of any notice required by the Agreement. Escrow Agreement at pp. 12-13. [dkt item 15, Exhibit A]

However, this does not conclude the analysis. In this case, as in *Johnson, Silverman,* and *Turner*, Debtor claims a right to the Escrow Release Funds once they are released from escrow[11] under a separate contractual agreement with one of the parties to the Escrow Agreement, Grand Tobacco. Amended Complaint, Exhibit B, "Agreement," 11-9271-ast. [dkt item 15] Specifically, Debtor claims that under the June 7 Agreement Grand Tobacco "absolutely assigned" its rights to all of the Escrow Release Funds to Debtor and acknowledged that they "were the Debtor's property." Amended Complaint, at ¶ 31.  Debtor argues that the June 7 Agreement creates an interest in the Escrow Release Funds that is superior to Ohio's levy and attachment on those funds, which Debtor states occurred on June 10, 2011.[12] *See* Complaint, ¶ 12, 21. [dkt item 1]

On its face, the June 7 Agreement appears to indicate that Debtor, and not Grand Tobacco, is the owner of the Escrow Release Funds.  Amended Complaint, Exhibit B, at ¶ 2. Clause 2 states: "GT [Grand Tobacco] and ITP [International Tobacco Products] agree that ITP is the owner of MSA escrow funds established by ITP."  *Id.*  The June 7 Agreement also indicates that Debtor was the source of the funds deposited into escrow at Eastern.  *Id.* ("ITP has established such escrow accounts and has funded required escrow payments.")  Debtor acquired the funds from LPC, Inc., pursuant to an order of this Court dated April 18, 2011, which authorized Debtor to obtain post-petition financing from LPC., Inc., secured by a lien on substantially all of Debtor's assets, in order "to allow the Debtor to continue to sell its products

---

[11]    At present, the funds remain in escrow at Eastern, but may be directed to be released by the State of Missouri -- for whose benefit they were deposited into escrow -- at some point in the future.  *See* Order to Show Cause, Exhibit D, "Affidavit of Curtis Stokes." [dkt item 112, M.C. 10-74894-ast] If Missouri does not direct the release of the funds from escrow, then it appears that they will not be released from escrow for approximately 25 years. Amended Complaint, at ¶ 19.

[12]    Ohio appears to argue in its Reply that it holds a superior interest in the Escrow Release Funds because Ohio's attachment was effected on May 31, 2011.  Reply State of Ohio to Response of International Tobacco Partners, Ltd., at 3 n.3, and Exhibit A, "Writ of Attachment." [dkt item 22]  However, the ultimate issue of priority of interest in the Escrow Release Funds under Massachusetts state law is not currently before the Court, and the Court references Debtor's claim of a superior interest for the sole purpose of determining that dismissal under Rule 12(b)(6) is not warranted at this juncture.

in Missouri."  Financing Motion, at ¶ 4 [dkt item 93, M.C. 10-74894-ast]; Order Granting Post-Petition Financing, [dkt item 100, M.C. 10-74894-ast].  The June 7 Agreement provides that the funds were deposited in the Escrow Account in Grand Tobacco's name, rather than in Debtor's name, "because the State laws require them to be in the name of the manufacturer, but Grand Tobacco and ITP hereby confirm their understanding and agreement that any such funds belong to ITP."  Amended Complaint, Exhibit B, at ¶ 2 [dkt item 15].  Clause 2 of the June 7 Agreement concludes that "ITP is entitled to receive any and all interest earned on the escrow funds, and upon release from escrow all such funds shall be paid to ITP which has complete ownership of any such funds." *Id.*  Therefore, viewing these facts in the light most favorable to Debtor, as the non-moving party, in accordance with Rule 12(b)(6), Debtor has established a plausible claim that the Escrow Release Funds are property of the estate under § 541(a)(7).

Ohio counters that, notwithstanding the alleged June 7 Agreement, the funds are not really property of the estate under 11 U.S.C. § 541, because they were merely earmarked for Grand Tobacco.  Motion to Dismiss, at ¶ 57. [dkt item 8]  However, this earmarking or conduit argument is inapplicable in a case such as this where the funds were obtained pursuant to a post-petition financing arrangement, secured by substantially all the debtor's assets, and allegedly subject to an unconditional assignment by Grand Tobacco in favor of Debtor.  *See* Financing Motion, at ¶ 15.  The cases cited by Ohio on earmarking are distinguishable.[13]

---

[13]    In *In re Barefoot Cottages Development Company, LLC*, the Bankruptcy Court for the Northern District of Florida held that escrow funds that the debtor's counsel provided from his own funds to pay the supersedeas bond on the debtor's behalf did not constitute property of the estate because "the Debtor did not at any time possess the funds or have any dispositive control over the receipt of the funds."  Case No. 09-50089-LMK, 2009 Bankr. LEXIS 2406, at *12, 15 (Bankr. N.D. Fla. July 28, 2009).  In the present case, the funds were transferred directly from LPC, the lender, to Eastern, the escrow agent.  However, *Barefoot Cottages* is distinguishable because "'the critical question [is] whether there was a transfer of property which could have been a part of the bankruptcy estate available for distribution to all creditors.'" *Id.* at 11 (quoting *Price Chopper Supermarkets*, 40 B.R. 816, 820 (Bankr. S.D. Cal. 1984).  Here, unlike the *Barefoot Cottages* debtor, Debtor put up substantially all its assets as collateral for the loan that provided the Escrow Release Funds, and those assets could otherwise be available for Debtor's creditors.  Because the funds Debtor borrowed were secured by substantially all Debtor's assets – which are part of the

The Court also notes that Ohio argues that in Debtor's Financing Motion, Debtor was not clear or explicit that Debtor would be making a deposit of funds that Grand Tobacco, and not Debtor, was legally obligated to make under the MSA. While this argument is correct, it is not impactive for the Motion to Dismiss or the Motion for Abstention.

Ohio also styles this as a dispute between itself and Grand Tobacco, with Debtor as a mere "nominal party." Motion for Abstention, at 3. [dkt item 14] Ohio emphasizes this point in its Reply, where it argues that Debtor, as an assignee[14] of Grand Tobacco, has only the rights in and to the Escrow Release Funds that Grand Tobacco has, and nothing more. Ohio's Reply, at ¶ 10-12. [dkt item 22] However, the question of which party ultimately has a superior interest in the Escrow Release Funds – as between Ohio, Debtor and the two recently joined defendants, Grand Tobacco and LPC (which have not yet appeared in this adversary proceeding) – cannot be decided on the pleadings.

In sum, when all proper inferences are drawn in favor of Debtor as the non-moving party, the allegations in the Complaint contain sufficient facts that, if taken as true, "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 570. The

---

bankruptcy estate and which in a liquidation would be available for the benefit of its creditors – the present case is distinguishable from those in which earmarking was found.

Similarly, *In re Palm Beach Heights Development & Sales Corp.*, 52 B.R. 181, 183 (Bankr. S.D. Fla. 1985), is distinguishable. In *Palm Beach Heights*, the court held that money deposited into escrow to assure completion of road and drainage improvements by the debtor and only available to the debtor upon completion of the project were not property of the estate. *Id.* However, the court noted that "Any claim, contingency or chose in action against the trust fund is the property of the estate but the fund itself is not." *Id.* Therefore, *Palm Beach Heights* actually appears to support Debtor's argument that, although funds held in escrow may not be property of the estate, the estate has a cognizable interest in or claim against those funds.

[14]        The State of Ohio points to the inclusion of the term "successors" in the Escrow Agreement and the absence of the term "assigns" as further proof that only Grand Tobacco, and not Debtor, has any rights in the Escrow Release Funds. Reply State of Ohio to Response of International Tobacco Partners, Ltd., at ¶ 7 [dkt item 22]. However, in the absence of a specific provision in the Escrow Agreement restricting or prohibiting assignment, the Court sees nothing on the facts presented in the Pleadings and supplemental briefing to override the long-held rule that contracts are freely assignable absent express language to the contrary. *See* 3 Restatement (Second) of Contracts § 317(2)(a) (1981); U.C.C. § 2-210(2) (2001). At the very least, this dispute raises a question of fact that further demonstrates why dismissal is unwarranted at this time.

June 7 Agreement appears on its face to be an unconditional assignment, granting Debtor all of Grand Tobacco's interest in the Escrow Release Funds.  Giving Debtor the benefits required under Rule 12(b)(6), the facts alleged in the Complaint, and the case law discussed above enable this Court to draw the "reasonable inference" that the bankruptcy estate has a cognizable interest in the Escrow Release Funds under § 541(a)(7).  If the facts alleged in Debtor's Complaint are ultimately proven at trial, they state a claim for which Debtor would be entitled to relief.  Thus, Ohio's Motions to Dismiss must be denied.

## II.  Ohio's Motion for Abstention

Having determined that dismissal is not warranted, the Court next addresses Ohio's Motion for Abstention, filed on September 26, 2011. [dkt item 14]

### A.  Mandatory Abstention

Addressing first mandatory abstention, the Court finds that abstention is not mandated in this adversary proceeding under 28 U.S.C. § 1334(c)(2),[15] because this adversary proceeding involves "core proceedings" under 28 U.S.C. § 157(b)(2).  Section 1332(c)(2) requires mandatory abstention when all of the following six factors are satisfied:

> (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is related to but not arising in a bankruptcy case or arising under the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6) that action can be timely adjudicated in state court.

---

[15] Section 1334(c)(2) provides in full:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

*Lead I JV, LP v. North Fork Bank*, 401 B.R. 571, 579 (E.D.N.Y. 2009) (citation and internal quotation marks omitted). "A party is not entitled to mandatory abstention if it fails to prove any one of the statutory requirements." *In re Refco, Inc. Sec. Litig.*, 2008 WL 1827644, at \*11 (S.D.N.Y. Apr. 21, 2008) (citation and internal quotation marks omitted).

Of the six mandatory abstention factors listed above, the third factor – whether this adversary proceeding is a "core proceeding" under 28 U.S.C. § 157(b)(2) – is often the most critical, because if an action is a core proceeding, then mandatory abstention is not required by § 1334(c)(2).[16]

Recently, in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), the United States Supreme Court held that although a bankruptcy court may have statutory authority under § 157(b)(2) to hear and determine a core matter, it may in certain circumstances lack constitutional authority under Article III of the United States Constitution to hear and determine the matter. *Stern* specifically addressed a counterclaim by the bankruptcy estate brought as a core proceeding under § 157(b)(2)(C). *Id.* at 2604. The present adversary proceeding does not involve a counterclaim under § 157(b)(2)(C), and neither party has raised the Court's constitutional authority to hear and determine this adversary proceeding. Therefore, this Court's analysis will proceed from the express language of § 157(b)(2).

---

[16]    *See In re Kolinsky*, 100 B.R. 695 (Bankr. S.D.N.Y. 1989). "Claims that clearly invoke substantive rights created by federal bankruptcy law necessarily arise under Title 11 and are deemed core proceedings." *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108–09 (2d Cir. 2006). In addition, "proceedings that, by their nature, could arise only in the context of a bankruptcy case" are core. *Id.* at 109; *see also Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 448 (2d Cir. 2005) ("Proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the proceedings directly affect a core bankruptcy function.") (citation and internal quotation marks omitted). "On the other hand, as noted above, an action is considered related to a bankruptcy proceeding and non-core if the outcome of the litigation might have any conceivable effect on the bankruptcy estate, or has any significant connection with the bankrupt estate." *Lead I JV, LP v. North Fork Bank*, 401 B.R. 571, 581 (E.D.N.Y. 2009) (citation and internal quotation marks omitted).

Section 157(b)(2) defines "core proceedings" as including "but not limited to" the following:

> (A) matters concerning the administration of the estate . . .
> (D) orders in respect to obtaining credit . . .
> (E) orders to turn over property of the estate . . .
> (K) determinations of the validity, extent, or priority of liens . . .
> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship except personal injury tort or wrongful death claims . . .

The present dispute involves post-petition borrowing by the Debtor, secured by a lien on substantially all the Debtor's assets, borrowed "to allow the Debtor to continue to sell its products in Missouri." Financing Motion, at ¶ 4. [dkt item 93, M.C. 10-74894-ast]  This Court has previously held that post-petition borrowing by the debtor is a core proceeding under §§ 157(b)(2)(A),(D),(K), and (O).  *See, e.g.*, *In re Global Container Lines Ltd.*, 2010 Bankr. LEXIS 4543, at *6 (Bankr. E.D.N.Y. Mar. 1, 2010).

Similarly, the Court finds that this adversary proceeding is a core proceeding under various provisions of § 157(b)(2). This adversary proceeding deals with matters concerning the administration of the estate under § 157(b)(2)(A).  The funds at issue were borrowed by Debtor from LPC upon an order of this Court, and secured by a lien on substantially all Debtor's assets. Ohio argues that this case is really a dispute between itself and Grand Tobacco; however, nowhere does Ohio argue that the Escrow Release Funds at issue did not originate from Debtor's post-petition financing application under 11 U.S.C. § 364.  Further, administration of the estate is implicated because the funds were to be repaid during the Debtor's Chapter 11 case.

This matter is also core under § 157(b)(2)(D) because it deals with Debtor having obtained credit under § 364 and the repayment of those funds pursuant to the repayment terms approved by the Court.  Additionally, this matter is core under § 157(b)(2)(E) because it involves

turnover of property of the estate.  The Court earlier discussed its findings that the bankruptcy estate has a property interest in the Escrow Release Funds, and Debtor's Amended Complaint seeks an order of the Court compelling turnover of the Escrow Release Funds under § 542 of the Bankruptcy Code.  Further, this matter is a core proceeding under § 157(b)(2)(K).  At its heart, this dispute involves a contest between the priority of Ohio's attachment lien and Debtor's interest under the June 7 Agreement. To resolve that dispute, the Court would have to determine the nature and extent of Ohio's lien, the rights and interests of the other parties to this action, and which party ultimately holds a superior interest in the Escrow Release Funds.  Finally, this matter is core under § 157(b)(2)(O), because it involves the adjustment of the debtor-creditor relationship between Debtor and the post-petition lender, LPC.  In sum, this adversary proceeding is a core matter under 28 U.S.C. § 157(b)(2) and, therefore, mandatory abstention is not warranted under 28 U.S.C. § 1334(c).

### B.  Permissive Abstention

While the Court has found that mandatory abstention is not required in this, the Court will permissively abstain from hearing this matter, conditioned on the terms set forth in this ruling.

When considering whether permissive abstention under 28 U.S.C. § 1334(c)(1) is appropriate, "bankruptcy courts have considered one or more—although not necessarily all—of twelve factors." *Barbaro v. Wider (In re Wider),* 2009 Bankr. LEXIS 3981, *5-6 (Bankr. E.D.N.Y. Nov. 30, 2009); *see Baker v. Simpson***,** 413 B.R. 38, 45 (E.D.N.Y. 2009), *aff'd,* 2010 U.S. App. LEXIS 15748 (2d Cir. July 30, 2010); *In re Bay Point Assocs.,* 2008 WL 822122, at *2–3 (E.D.N.Y. Mar.19, 2008); *In re Twin Labs. Inc.,* 300 B.R. 836, 841 (S.D.N.Y. 2003).  The twelve factors are:

> (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted 'core' proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of [the court's] docket; (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties.

*Barbaro*, 2009 Bankr. LEXIS 3981, at *6-7.

Here, Ohio contends in its Motion for Abstention [dkt item 14] that discretionary abstention is appropriate because the pivotal issues as Ohio defines them – whether Grand Tobacco is the legal owner of the funds, and whether the funds are subject to attachment by Ohio – would be better adjudicated by the Massachusetts Court.    Debtor counters that bankruptcy issues predominate over the state law and that the only state law question is the validity of the assignment under Massachusetts law.    Consideration of the twelve factors cited by the Court demonstrates that permissive abstention is appropriate in this adversary proceeding.

**1. Efficient Administration of Debtor's Estate**

Addressing the first factor, the Court finds that abstention will not adversely affect the efficient administration of Debtor's bankruptcy estate.    While this Court is familiar with the facts and disputes in this case, this adversary proceeding is still in its early stages.    Defendant, the State of Ohio, has not yet filed an answer, and the two new defendants – Grand Tobacco and LPC – have not yet appeared or answered.    The Court also notes that Debtor is involved in another adversary proceeding with the U.S. Department of Agriculture ("USDA," adv. pro. no. 10-9007-ast).    That proceeding is also in its early stages.    Additionally, counsel for Debtor

previously indicated that the main bankruptcy case cannot be resolved until both adversary proceedings have been tried to conclusion. This Court has no reason to believe that the Commonwealth of Massachusetts cannot get to a determination on the merits of this adversary proceeding just as quickly as this Court could.

### 2. Extent to Which State Laws Predominate Over Bankruptcy Issue

Ohio asserts that "state law claims predominate" this adversary proceeding, and Debtor counters that numerous provisions of the Bankruptcy Code are implicated by this dispute. Motion for Abstention, at 9 [dkt item 14]; Objection to the State of Ohio's Motion for Abstention, at ¶ 26. [dkt item 20]   In that respect, both parties are correct. This case involves a mix of state law questions – including the validity of the assignment in the June 7 Agreement and the order of priority as between that assignment and Ohio's attachment and levy in Massachusetts – as well as issues relating to property of the estate under § 541(a)(7) of the Bankruptcy Code and how the outcome of this litigation affects Debtor's bankruptcy case. Given this seeming equilibrium, it appears to this Court that neither it nor the Massachusetts Court has a monopoly on the relevant law in this case. However, the Court notes that, at this stage in the litigation, state law questions of the validity of the assignment and priority of interest must be answered before a final § 541 determination can be made.

### 3. Difficulty or Unsettled Nature of Applicable State Law

The state law issues in this case are not "particularly novel or complex." However, the Massachusetts Court appears to be the more appropriate forum for determining the preliminary questions: whether Debtor holds a valid assignment under Massachusetts law, and whether that assignment has priority over Ohio's attachment and levy. Those two questions of state law must be answered before a final determination can be made under § 541.

### 4. Presence of Related Proceeding in State Court

The fourth factor weighs strongly in favor of abstention.  This dispute began when Ohio filed its action in the Massachusetts Court on May 31, 2011.  Rather than intervene in that action, Debtor came to this Court first by motion in the main case and then by commencing this adversary proceeding. The Escrow Release Funds in dispute are escrowed in the Commonwealth of Massachusetts.  Further, the Escrow Agreement's choice of law clause provides that Massachusetts law will govern any dispute related to the Escrow Agreement.

### 5. Jurisdictional Basis, If Any, Other Than 28 U.S.C. § 1334

While the Court has found that it has core jurisdiction in this matter, there does not appear to be a jurisdictional basis other than 28 U.S.C. § 1334.

### 6. Degree or Remoteness of Adversary Proceeding to Main Bankruptcy Case

While this adversary proceeding has a direct impact on Debtor's main bankruptcy case, as noted in factor 1 above, Debtor's bankruptcy case cannot proceed to ultimate conclusion until both this case and the adversary proceeding involving USDA are resolved.

### 7. The Substance Rather than the Form of an Asserted "Core" Proceeding

In both substance and form, questions of administration of the estate, estate property, and post-petition financing are "core proceedings" under § 157(b)(2). Nevertheless, permissive abstention exists under 28 U.S.C. 1332(c)(1) precisely for core proceedings where mandatory abstention is unwarranted.  In such cases, permissive abstention is "left to the bankruptcy court's discretion . . . [and] can be warranted 'in the interest of justice, or in the interest of comity with State courts or respect for State law.'"  *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 232 (2d Cir. 2002) (quoting 28 U.S.C. § 1334(c)(1)).

**8. Feasibility of Severing State Law Claims from Core Bankruptcy Matters**

Although this adversary proceeding involves core proceedings, it is easily severable from the main bankruptcy case. This Court can, and will, stay this adversary proceeding in favor of the Massachusetts Action on the terms set forth in this ruling. Further, as discussed above, there should be no adverse effect on the main bankruptcy case, as the main case cannot proceed to ultimate conclusion until this adversary proceeding and the one involving USDA are resolved.

**9. Burden of the Court's Docket**

While the Court does not anticipate any significant additional burden caused to its docket by the presence of this adversary proceeding, the Court nevertheless concludes that the Massachusetts Court is the appropriate forum to hear this matter.

**10. Likelihood of Forum Shopping by One of the Parties**

The Court finds no likelihood of forum shopping by any of the parties to this adversary proceeding.

**11. Existence of a Right to a Jury Trial**

None of the parties to this action have as yet requested a jury trial. However, to the extent that a jury trial may be sought in the future, the Court notes that bankruptcy courts may only hear jury trials if "specifically designated to exercise such jurisdiction by the district court and with the express consent of all the parties." 28 U.S.C. § 157(e).

**12. Presence in the Proceeding of Non-Debtor Parties**

There are multiple non-debtor parties in this action, namely Ohio, Grand Tobacco and LPC. Two of these defendants – Grand Tobacco and LPC – have not yet appeared in this matter. The third defendant, Ohio, has objected both to this court's subject matter jurisdiction over the matter and its personal jurisdiction over the State of Ohio. Combined Objection and Motion to

Dismiss, at ¶ 4, 12, 52. [dkt item 8] By contrast, both Ohio and Grand Tobacco have appeared in the Massachusetts Court action to contest ownership of the Escrow Release Funds.

Related to this, Debtor has not argued that it is not subject to the jurisdiction of the Commonwealth of Massachusetts. It is unclear to the Court whether Debtor is subject to suit in Massachusetts, or is licensed in or does business in Massachusetts, because Debtor's recitation of the geographic breadth of its business continues to change from "throughout the United States"[17] to "approximately thirty different states"[18] to "five different states."[19] However, to protect is claim to the Escrow Release Funds, Debtor may certainly intervene in the Massachusetts Action.

In sum, the Court finds that the weight of the twelve permissive abstention factors – particularly factors 1, 4, 5, and 8, and to some extent 2 – supports this Court's determination to abstain from this action under § 1334(c)(1), while no factor weighs strongly against permissive abstention. In the Court's view, "the interest of justice, . . . the interest of comity with State courts [and] respect for State law" tip the scale in favor of abstaining from this matter per the terms set forth in this ruling. *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 232 (2d Cir. 2002).

## III.  Debtor's Request for a Temporary Restraining Order

Finally, the Court takes up Debtor's request for an order enjoying Ohio from any act to gain possession of the Escrow Release Funds once they are released from escrow.

The Court does not believe that a temporary restraining order ("TRO"), or other injunctive relief, is necessary at this time. Injunctive relief would be redundant in this case because of the automatic stay under § 362(a) that came into effect when Debtor filed its petition for relief on June 25, 2010. This Court has previously held that when a TRO is redundant to the

---

[17] Motion to Authorize Payment of Prepetition Wages and Salaries, at ¶ 1, main case 10-74894 [dkt item 3].
[18] Complaint, at ¶ 4, dated August 10, 2011. [dkt item 1].
[19] Amended Complaint, at ¶ 5, dated September 27, 2011 [dkt item 15].

automatic stay, it is unnecessary. *Gold & Honey (1995) LP, Gold & Honey, Ltd., Almond Jewelers, Inc. v. First International Bank of Israel (In re Gold & Honey (1995) LP)*, 08-8301-ast, Summary of Decision and Order Denying Temporary Restraining Order, at 4-5 [dkt item 18]. Other courts have reached a similar conclusion. *See Adams v. Indiana*, 795 F.2d 27, 29 (7th Cir. 1986); *Hook v. Cooke (In re Hook)*, 07-cv-02372 BSJ, 2008 U.S. Dist. LEXIS 75642, at *34 (D. Colo. Sept. 29, 2008).

Further, the Court does not believe that a TRO is required in this case because the Massachusetts Court issued a similar injunction in the Massachusetts Action on August 18, 2011, which enjoined release of funds to any person or entity pending a decision on Ohio's request for a preliminary injunction. Amended Complaint, at ¶ 27. The Court notes that the Massachusetts Action was commenced on May 31, 2011, more than two months before this adversary proceeding was commenced. In addition, the Escrow Release Funds are currently held in escrow in Massachusetts by a Massachusetts-chartered bank.

The Court reiterates that the automatic stay in Debtor's main bankruptcy case continues to preclude any party from attaching or dissipating property of the estate without an order of this Court. It is the Court's view that, in abstaining from this matter per the terms below, if the Massachusetts Court ultimately rules in favor of Ohio, then the estate has no enforceable property interest in the Escrow Release Funds and the stay is not in effect as to those funds.[20] However, if the Massachusetts Court ultimately rules in favor of Debtor, then Ohio cannot enforce its judgment against the Escrow Release Funds, and the automatic stay will protect the estate's interest in those funds.

---

[20]    The Court notes that the amount of Escrow Release Funds – $981,401.09 – is less that the amount of Ohio's 2005 judgment against Grand Tobacco – $1,253,961.61.

## Conclusion

In conclusion, having found that the Debtor has pled sufficient facts to raise a plausible claim that the Escrow Release Funds are property of the estate under § 541(a)(7), the Court denies Ohio's Motions to Dismiss. [dkt items 8, 24]

Turning to Ohio's Motion for Abstention [dkt item 14], the Court finds that, in balancing the factors for permissive abstention under 28 U.S.C. § 1334(c)(1), abstention is appropriate in this adversary proceeding. Therefore, the Court will abstain from hearing this adversary proceeding subject to the following terms and conditions:

1. The Court partially abstains from hearing this matter in favor of the action currently pending before the Superior Court of the Commonwealth of Massachusetts for the County of Suffolk, case no. 2011-2028-A, for a period of 180 days from the date of entry of this written decision. The Court does not abstain with respect to Debtor's Fifth Cause of Action Against Ohio in the Amended Complaint, which alleges a violation of the automatic stay provisions of § 362(a). Amended Complaint, at 10-11. [dkt item 15]

2. At the end of the 180-day period, the parties are to appear before this Court to report on the status of the state court litigation.

3. If the state court litigation is resolved earlier than 180 days from the date of this decision, then the parties are directed to advise this Court by letter docketed in the adversary proceeding within seven (7) days of the date of that resolution as to the nature of that resolution.

   a. If the Massachusetts Court determines that Debtor has no interest in the Escrow Release Funds that is superior to Ohio's interest, then it is this Court's view that the estate has no enforceable property interest in those funds and the stay will not be implicated.

   b. If, however, the Massachusetts Court determines that Debtor has a superior interest in the Escrow Release Funds, then that property interest will continue to be protected by the automatic stay under § 362(a).

   c. Alternatively, if the Massachusetts action is resolved by settlement, then the parties shall seek the approval of this Court of any such settlement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

Lastly, based on the protections afforded by the automatic stay, the Court does not find a TRO or other injunctive relief is warranted at this time.

Orders in conformity herewith shall be issued.



Dated: November 9, 2011
     Central Islip, New York

_____
**Alan S. Trust**
**United States Bankruptcy Judge**